UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| **DAWN DIEDRICH, individually, and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., d/b/a MERRILL LYNCH ,**<br><br>**Defendant.** | **Case No. 18-cv-652** |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

I.  **INTRODUCTION**

Plaintiff Dawn Diedrich ("Ms. Diedrich") originally pleaded this action as an individual wage and hour dispute. By virtue of her employment in the financial service industry, however, Ms. Diedrich was bound to arbitrate her claims in accordance with Financial Industry Regulatory Authority ("FINRA") rules. Thus, Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. d/b/a Merrill Lynch ("Merrill Lynch") moved to compel the case to arbitration. In response, Ms. Diedrich amended her complaint to allege a putative wage and hour class and collective action, which effectively exempts the case from arbitration per FINRA rules. In her haste to avoid arbitration though, Ms. Diedrich filed a First Amended Complaint ("FAC") that is devoid of any factual detail. Although it certainly cites relevant statutory provisions and asserts violations of those provisions, it does not contain any factual allegations that support those alleged statutory violations. For example, Ms. Diedrich does not allege:

1

- the amount of hours she claims to have worked;

- the amount of hours that she worked for which Merrill Lynch allegedly did not pay her;

- the tasks she allegedly performed during the unpaid time worked; or

- examples of how Merrill Lynch knew, or should have known, she was working off-the-clock, during meal periods, or more than forty (40) hours per week.

Instead, her FAC consists of broad legal conclusions that largely just parrot the FLSA's statutory language, which as a matter of law does not suffice to state a viable claim for relief. Courts faced with nearly identical boilerplate pleadings in wage and hour cases have not hesitated to dismiss such complaints, and the result should be no different here. This Court should dismiss the FAC it in its entirety in accordance with Fed. R. Civ. P. 12(b)(6).

## II.  STATEMENT OF THE FAC'S ALLEGATIONS

Ms. Diedrich worked for Merrill Lynch as a non-exempt Senior Registered Client Associate from July 2013 to about January 25, 2018. FAC, ¶ 13. She alleges she was scheduled to work at a Merrill Lynch office in Wisconsin from "approximately 8:30 a.m. to 4 p.m. Monday through Friday" but does not identify the Merrill Lynch branch or branches in which she worked. *Id.* at ¶ 19. Her job allegedly included assisting Financial Advisors with administrative tasks, for which Merrill Lynch paid her $26.35 per hour. *Id.* at ¶¶ 15-16.

According to Ms. Diedrich, Merrill Lynch had a "common practice or policy" of failing to pay non-exempt employees for all hours worked. *See Id.* at ¶¶ 21, 23, 32, 36. She alleges that Merrill Lynch required her and other non-exempt employees in Wisconsin (putative class members) to work before and after their regular shifts as well as during weekends. *Id.* at ¶ 20. She further alleges that Merrill Lynch required her and putative class members to work during meal periods, which prevented them from allegedly having a full thirty uninterrupted minutes for a meal

2

break. *Id.* at ¶ 22. Merrill Lynch allegedly did not pay Ms. Diedrich and other putative class members for this "off-the-clock" work because some unidentified person or persons "regularly discouraged" them from reporting all hours they worked on their timesheets or expressly "instructed" them not to report all hours. *Id.* at ¶ 26. As a result, Ms. Diedrich asserts that she and putative class members "regularly" worked in excess of forty hours in "many workweeks" but were not paid overtime compensation for it. *Id.* at ¶ 24. The "factual" allegations end there. As explained below, Merrill Lynch and this Court are left to guess precisely what Merrill Lynch did, if anything, to give rise to the statutory wage and hour violations Ms. Diedrich claims.

### III. MS. DIEDRICH'S BALD ALLEGATIONS FAIL TO STATE A VIABLE CLAIM UNDER SUPREME COURT PRECEDENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, labels and conclusions that merely recite the elements of a claim are legally insufficient. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("'[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'") (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)). Rather, a plaintiff's complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A] mere possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability" are insufficient. *Iqbal*, 556 U.S. at 678. Notably, in the FLSA context, although a plaintiff need not "plead infinitesimal details[,]" (*Brown v. Club Assist Rd. Servs.*, No. 12-5710, 2013 WL 5304100, at *6 (N.D. Ill. Sept. 19, 2013))[1], she must provide

---

[1] Per Local Rule 7(j), all unreported decisions cited in this Memorandum of Law are attached as **Exhibit A**.

3

"some specific facts" to ground her legal claims. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). None of Ms. Diedrich's claims satisfy this pleading standard.

### A. This Court Should Dismiss Ms. Diedrich's Unpaid Wage Claims Because She Does Not Allege A Plausible Claim for Relief.

By her FAC, Ms. Diedrich seeks unpaid wages under both the FLSA and Wisconsin Wage Law.[2] More specifically, she seeks unpaid straight time for the time she allegedly spent working off-the-clock (to include time spent working during meal breaks) and unpaid overtime pay, to the extent that alleged off-the-clock work caused her to work more than forty (40) hours in any given week. Her claims, however, rely on abstract and conclusory statements concerning the hours and earning elements of the claims she seeks to pursue. Her boilerplate recitations of the relevant statutory provisions and vague allegations of harm, however, simply do not satisfy governing pleading standards.

In the wake of the Supreme Court's rulings in *Twombly* and *Iqbal* (and surely in response to the spate of wage and hour cases filed in federal court in recent years), a clear national trend has emerged that requires wage and hour plaintiffs to offer more than just formulaic recitations of the FLSA's regulations or statutory provisions to proceed with such claims. For example, the First, Second, Third, and Ninth Circuits have ruled that the *Twombly* and *Iqbal* standards require a FLSA plaintiff to plead a baseline of facts which show that his or her claim for relief is not just possible but plausible. *See, e.g.*, *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012) (holding mere statement that plaintiff "regularly worked" more than forty hours per week does not state valid

---

[2] The Wisconsin Wage Law and administrative regulations are virtually identical to those of the FLSA. *Compare* 29 C.F.R. 785.11 and 785.13 (regarding "suffered or permitted to work") *with* Wis. Admin. Code Ch. DWD § 272.12(2)(a)1; 3. Because of the similarities to the FLSA, "Wisconsin's administrative regulations are to be interpreted in such a manner as to be consistent with the federal Fair Labor Standards Act (FLSA) and Code of Federal Regulations." *Madley v. RadioShack Corp.*, 306 Wis. 2d 312, 323 (Wisc. Ct. App. 2007); *Jimenez v. GLK Foods LLC*, No. 12-209, 2016 WL 2997498, at *17 (E.D. Wis. May 23, 2016) ("Wisconsin's wage and hour laws are generally interpreted consistently with the FLSA and federal regulations."). Thus, to the extent Ms. Diedrich's FLSA claim fails as a matter of pleading, so too does her state law claim(s).

4

FLSA overtime claim); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (finding allegation that "in some weeks" plaintiff "worked more than forty hours a week without being paid 1.5 times her rate of compensation . . . no more than rephrase[es] the FLSA's formulation" and thus fails to satisfy Fed. R. Civ. P. 8); *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (finding plaintiffs did not allege viable FLSA claim where plaintiffs alleged typical workweek exceeded forty hours in addition to extra hours worked during meal breaks and outside of scheduled shifts, plaintiffs did not allege extra hours were worked during typical forty hour workweek); *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), as amended (Jan. 26, 2015) (concluding plaintiff failed to state valid FLSA claim because "complaint did not allege facts showing that there was a given workweek in which he was entitled to but denied minimum wage or overtime wages" and that complaint provided no detail about "the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week."). Thus, a plaintiff cannot just baldly allege she worked off-the-clock, or that her employer denied her pay, and be allowed to proceed. Rather, a plaintiff must bolster such conclusions with facts that, if true, actually establish a wage and hour violation, *i.e.*, that the employer did not pay the plaintiff and/or putative class members for time actually worked.

And although the Seventh Circuit has yet to indicate its position on the precise pleading requirements in wage and hour cases, courts within the Seventh Circuit have consistently followed the national trend, dismissing "skeleton" wage and hour complaints that lack sufficient factual allegations. *See, e.g., Hughes v. Scarlett's G.P., Inc.*, No. 15-5546, 2016 WL 4179153, at *2 (N.D. Ill. Aug. 8, 2016) ("while the law does not require an FLSA plaintiff 'to plead infitesimal details[,]' federal pleading standards require plaintiffs to 'provide some specific facts to ground those legal claims.'") (internal citations omitted); *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, No.

5

15-02361, 2016 WL 2909649, at *3 (N.D. Ill. May 19, 2016) (finding plaintiff's amended complaint failed to state FLSA claim because it did not include, *inter alia*, "information regarding when or how often she worked overtime . . . . how much overtime she worked . . . . [and] what type of work she performed outside of regular work hours"); *Silver v. Townstone Fin., Inc.*, No. 14-1938, 2015 WL 1259507, at *2 (N.D. Ill. Mar. 17, 2015) ("To state a claim for failure to pay overtime, a plaintiff must sufficiently allege forty hours of work in a given workweek, as well as some uncompensated time in excess of forty hours."); *Pazda v. Blast Fitness Grp. Personal Training, LLC*, No. 13-00326, 2013 WL 4659688 (N.D. Ill. Aug. 29, 2013) (dismissing wage and hour complaint that did not allege facts, such as when plaintiff worked, and how many hours plaintiff worked, or how much plaintiff was paid); *Kwan Bom Cho v. GCR Corp.*, No. 12-4562, 2013 WL 675066, at *2 (N.D. Ill. Feb. 22, 2013) (dismissing complaint because plaintiff failed to allege, among other things, how many hours employee worked, to support plaintiff's FLSA claim); *Robertson v. Steamgard*, No. 11-8571, 2012 WL 1232090, at *1 (N.D. Ill. Apr. 12, 2012) (granting motion to dismiss plaintiff's FLSA overtime claim because plaintiff's allegations – which were limited to generalized statement that "he regularly worked more than 40 hours per week but was not paid the proper overtime premiums – [did] not enable the reader of the complaint to understand any of the factual underpinnings of the claims"); *Wilson v. Pioneer Concepts, Inc.*, No. 11-2353, 2011 WL 3950892, at *3 (N.D. Ill. Sept. 1, 2011) (finding allegations related to FLSA claim insufficient under *Twombly* because complaint alleged only that plaintiff "was an employee of Pioneer; that unidentified employees worked an unidentified number of extra hours during lunch breaks and had an unspecified amount of time rounded off to their detriment at the time clock"); *but see Martinez et al. v. Regency Janitorial Serv. Inc.*, No. 11-259, 2011 WL 4374458 at *4 (E.D. Wisc. Sept. 19, 2011) (declining to dismiss FLSA claim where complaint alleged only that

defendant required plaintiffs to work before and after their scheduled work shifts and worked during unpaid meal breaks).

To survive a motion to dismiss, these courts generally require wage and hour plaintiffs, like Ms. Diedrich, to substantiate their conclusory allegations with basic factual allegations, including the job duties they claim to have performed during the alleged unpaid work. *See Attanasio v. Cmty. Health Sys., Inc.*, No. 11-582, 2011 WL 5008363, at *7 (M.D. Pa. Oct. 20, 2011) (dismissing FLSA complaint where "Plaintiffs wholly fail[ed] to plead where they work, what it is they do, how long they have done it for, and other basic facts that would add credence to their bare legal recitations"); *Ash v. Anderson Merchandisers, LLC*, No. 14-00358, 2014 WL 11394891, at *3 (W.D. Mo. July 2, 2014) (dismissing FLSA claim because plaintiff did "not identify when the specific FLSA violation(s) occurred, does not state which Defendant committed the alleged violation(s), and does not identify any particular individual that instructed Plaintiffs to perform overtime work"). Alleging the job duties performed during the alleged unpaid overtime and off-the-clock work is especially important because it shows that it is plausible that the alleged overtime work is compensable rather than non-compensable, such as preliminary, postliminary, or *de minimis* work.

In addition, where – as here – a complaint alleges that an employer effectively forced its employees to work off-the-clock, courts have required supporting facts that show "who advised them of this policy, when they were told they were required to work 'off-the-clock,' how the policy was imposed . . . and whether either Plaintiff or any other . . . employee complained to a supervisor about the practice and, if so, what [defendant]'s response was." *Mell v. GNC Corp.*, No. 10-945, 2010 WL 4668966, at *7 (W.D. Pa. Nov. 9, 2010); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, No. 10-2661, 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011) (dismissing plaintiffs'

7

FLSA and New York Labor Law claims for unpaid overtime in part because "[t]he only allegations in the complaint that suggest an element of compulsion are utterly conclusory in nature.").

In a related vein, a complaint that seeks compensation for work performed during allegedly unpaid meal breaks only states a viable claim if it contains specific factual allegations which support the conclusion that the defendant required the work during meal breaks. *Harris v. Reliable Reports Inc.*, No. 13-210, 2014 WL 931070, at *4 (N.D. Ind. Mar. 10, 2014) (dismissing FLSA claim seeking compensation for work during unpaid meal breaks because although plaintiff alleged "in conclusory fashion that Reliable refused to pay for meal breaks where work activities were performed he does not allege facts that plausibly suggest that this is the case"); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 509 (E.D.N.Y. 2011) (dismissing FLSA claim that "contained 'no factual allegations about when the alleged unpaid wages were earned (*i.e.*, which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation, the heart of the claim.'") (citation omitted).

Finally, an employer's liability under the FLSA for unpaid wages due to off-the-clock work is dependent on a plaintiff establishing that her employer had actual or constructive knowledge of the off-the-clock work. *See Schremp v. Langlade Cty.*, No. 11-590, 2012 WL 3113177, at *2 (E.D. Wis. July 31, 2012) (citing *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011)) ("*To state a claim under the FLSA*, Kellar must show that Summit had actual or constructive knowledge of her overtime work . . . [Indeed], the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about) (citing 29 U.S.C. § 203(g)) (emphasis added).[3]

---

[3] Under the Wisconsin Wage Law a plaintiff must "present evidence that [their employer] knew or had reason to believe that work was being completed off-the-clock." *Vang v. Kohler Co.*, No. 09-842, 2012 WL 2917788, at *2 (E.D. Wis. July 12, 2012), vacated, 488 F. App'x 146 (7th Cir. 2012) (citing *Kellar*, 664 F.3d at 177).

Here, even a cursory review of Ms. Diedrich's FAC makes plain that she has made no effort to allege facts sufficient to nudge her claim from conceivable to plausible. Although she does allege Merrill Lynch had a common policy or practice of permitting her and others to perform work before and after scheduled shifts, on weekends, and during meal breaks and then not paying for the work, whether straight time or overtime, her allegations are broad and conclusory. FAC at ¶¶ 20-23, 32, 36. Indeed, she does not allege any factual detail about *even one week* in which she (let alone any class member) worked in excess of forty hours, worked off-the-clock, or worked during a lunch break and was not paid for it. As such, the FAC raises more questions than it answers. She alleges nothing about, *inter alia*:

- the timeframe and/or frequency in which she or putative class members performed work before and after their scheduled start and end times of her shifts and on weekends, performed work during their uncompensated meal periods, and worked over forty hours in a workweek;

- how many hours Ms. Diedrich and putative class members worked off-the-clock and in excess of forty hours in a workweek but were not paid for it;

- what work Ms. Diedrich and putative class members performed off-the-clock and in hours worked over forty (40);

- how Merrill Lynch imposed the alleged policy or practice of not paying non-exempt employees for all time worked and how Merrill Lynch communicated the alleged policy or practice to non-exempt employees; or

- whether Ms. Diedrich or anyone else complained about the alleged policy or practice and what, if any, Merrill Lynch's response was.

Likewise, Ms. Diedrich fails to allege facts that show whether or how Merrill Lynch knew or should have known that she and putative class members worked the off-the-clock as she alleges. She certainly does not identify the name of *any* supervisor/manager who allegedly "witnessed and had direct knowledge" that she worked off-the-clock and during meal periods or who "regularly discouraged" or instructed her against reporting all hours worked on her time sheet. FAC at ¶¶

9

25-26. Instead, the FAC simply parrots the relevant statutory elements with conclusory assertions, neglecting the necessary factual detail to meet the federal pleading threshold. As such, Ms. Diedrich fails to properly allege that Merrill Lynch knew or should have known that Ms. Diedrich and the putative class members worked off-the-clock, overtime, or during meal periods.

### B. Ms. Diedrich's Claim Of A Willful FLSA Violation Fails As A Matter Of Law.[4]

In Count I, Ms. Diedrich pleads a willful violation of the FLSA.[5] To establish a willful violation, a plaintiff must allege and prove facts that the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also E.E.O.C. v. Madison Cmty. Unit School Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987). Like all elements of an FLSA claim, Ms. Diedrich cannot just assert that the underlying FLSA violation was willful; she must support that assertion with allegations of fact. *Compare DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1036 (E.D. Wis. 2008) (finding allegations defendant "did not act in good faith in failing to pay proper overtime pay, and had no reason to believe that its failure to do was not a violation of the FLSA . . ." and that defendant failed to maintain proper records of the hours its employees worked and failed to pay employees overtime sufficient to survive a motion to dismiss on willfulness allegation) *with Wilson*, 2011 WL 3950892, at *3 (dismissing plaintiff's willful violation claim because it amounted to "nothing more than [a] conclusory recital[s] of a cause of action").

Here, willfulness allegations consist of the following: "Merrill Lynch's conduct, as set forth in this complaint, was willful . . ." (FAC ¶ 30); and Merrill Lynch "willfully fail[ed] and

---

[4] This claim fails for all the reasons stated above, as it is derivative of Ms. Diedrich's FLSA claim. *See, e.g.*, *Pazda*, 2013 WL 4659688, at *4 ("Furthermore, the reasoning for dismissing the collective action allegations in [the underlying FLSA overtime claim] applies equally to such claims in [the FLSA willfulness claim].").

[5] She presumably does so because willful violations of the FLSA are subject to a three-year statute of limitations, as opposed to the FLSA's ordinary two-year limitations period. 29 U.S.C. § 255(a).

10

refus[ed] to compensate [Ms. Diedrich and putative class members] for each hour worked, including overtime compensation for hours worked in excess of forty in a workweek." *Id.* at ¶ 31. These allegations are devoid of any supporting facts; there are certainly no *facts* alleged that tend to show that Merrill Lynch *purposefully* (i.e., acted with reckless disregard) violated the FLSA. Nor are there facts that show Merrill Lynch was even aware of these alleged practices or that they violated the FLSA. Indeed, Ms. Diedrich does not even allege that anyone put Merrill Lynch on notice of these alleged unlawful pay practices. Accordingly, under any scenario, this Court must dismiss the willfulness allegation in Count I of the FAC and limit her FLSA claim to the FLSA's two-year (not three-year) statute of limitations.

## IV.  CONCLUSION

For all the foregoing reasons, this Court should grant Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., d/b/a Merrill Lynch's Motion to Dismiss Plaintiff's Complaint and issue an order dismissing this case in its entirety, with prejudice. Alternatively, this Court should issue an order dismissing with prejudice any allegation that Merrill Lynch willfully violated the FLSA and directing Ms. Diedrich to file an amended complaint to provide factual allegations in support of her claims that Merrill Lynch violated the FLSA and Wisconsin Wage Law.

Dated: August 3, 2018

                      Respectfully submitted,

                      *s/ John R. Richards*
John R. Richards
richardsjr@gtlaw.com
(Admitted: 05/19/2008)
**Greenberg Traurig LLP**
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
(678) 553-2100 (office)
(678) 553-2212 (facsimile)

James N. Boudreau
boudrreau@gtlaw.com
(Admitted: July 26, 2018)
Adam R. Roseman
Rosemana@gtlaw.com
(Admitted: July 26, 2018)
**Greenberg Traurig LLP**
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 988-7833/26 (office)
(215) 717-5209 (facsimile)

**Attorneys for Defendant**